Good morning, your honors. My name is Adrian Fontes, CJA, appointed from Phoenix, Arizona. Lying about your age does not make you an adult. In Seca Prado, we read that federal jurisdiction cannot be created by parties through waiver or through estoppel in cases in which jurisdiction does not otherwise exist. The district court's decision in this case, we must acknowledge, has some support in the duplicitous lies of the appellant, as is plainly shown in the record. It is, however, neither logical nor plausible that my client is an adult or was an adult on the date that mattered. The district court did commit plain error in its May 6, 2010, order, and here's why. It is arguable that the government met its prima facie burden in the first step of the three-step process that we have to use in these cases. At hearings on October 20th and 21st of 2009, evidence did show that Daniel had, on numerous occasions, used several names and several dates of birth. Each of the dates of birth that he used made him an adult and gave him the age of majority for the date of the crime. The government, then supported by the decisions of the court, considered this pattern of lying to have estopped him from asserting his actual age. And we know that based on Seca Prado, if you don't have jurisdiction, you don't have jurisdiction no matter who lied about it. Now, when we look to the second step in our three-step process, we see that a birth which by the government witnesses own testimony that may have well come directly from the consul himself, in his testimony on the second day of our hearings, there was a question asked, and I'm on page 86 of the excerpt of record reading from line 12. The question was, did he tell you that I faxed him a letter memorializing the conversation and asking? The answer was no. The question continued, asking him to show up at the hearing on October the 9th that was originally set before Judge Voss and that he was here in the courthouse. The answer was this, quote, all he said was that he had helped you get the birth certificate from the parents. And that answer was an answer that was directed to me in my examination. The agent said that the Mexican consul had assisted Daniel's lawyer in getting this information. And that means that this information, this birth certificate and this letter, actually were his. That is the crux of the appellant's information regarding his age. It does not come from him. It does not come from this juvenile liar. All of the other information in this case, lock, stock, and barrel, comes from the juvenile. Out of his mouth, either in the first deportation in 2008 or any of the other subsequent arrests or convictions in 2009 and thereafter. Kagan. How does the information you've described as coming from Mexico and the consul relate to what I understood to be at least part of the basis for the decision below, which was even if the birth certificate itself was a real, live, genuine birth certificate, there was insufficient basis for the court to find that it was his birth certificate? Well, that's the illogical and implausible part. How is it not? Because it's someone else's. Well, the series of events were thus, Your Honor. Well, I know what this — I mean, after I read it, but that's the district court said, you know, we don't have any testimony that links this up. It could be somebody with the same name. It could be some other individual. We don't know. I mean, that's what the district court concluded. What's the evidence to the contrary? The evidence to the contrary comes from the case agent and his interactions with the Mexican consul. The Mexican consul assisted us in retrieving the information that we needed from the authorities in Oaxaca. This information didn't come from some teenager. This information didn't come from someone who was trying to hide his age of majority so that some kissy-face adventure with a 14-year-old would go uncharged. This information came directly from an interaction that we had on the day of the IA with the Mexican consul. The Mexican consul then contacted people in Oaxaca, and the letter that was dated October 2nd confirms — this is the letter that had the picture on it — confirms that that's when it was generated and that's where it was generated. That accompanied the birth certificate and the facts. But the picture itself apparently was inadequate, either because it wasn't clear enough or the quality of it was too bad to be able to say, that's him? Well, in that case, Your Honor, we have to jump immediately to the second question, and that is, will this court allow me to send an investigator down to Oaxaca to do the exhaustive sorts of research that's necessary and incur those kinds of costs, or are we going to go with the contact that the Mexican consul made, who is recognized as the authority of the Mexican government here in the United States, through the agent himself to testify as to that competent authority's certification that he helped get these records? I don't know what can be more dependable unless we actually get someone down there with a videotape, as in — I can't remember the name of the case, but the difference is we have to expend enormous amounts of research. Well, he got himself into this pickle by his own testimony. I mean, I understand what you say, you've got to get that — I don't think I can recall a case in which we have, as an appellate court, granted investigative funds. Do you have any precedent for us on that? No, Your Honor. I'm not sure it's allowed under the rules. I'm not either, Your Honor, but the bottom line here is this — I don't fault you for asking, I'm just saying I saw your request and it couldn't find any precedent. I thought you might have some. Your Honor, it's — I'm coming on what I'd like to reserve as a little bit of time, but I will say this coming away. The government doesn't know who they're prosecuting. They've got various names, various dates of birth that come from an individual who gave them a whole fluff of information. None of it is dependable. But that's what they're relying on. And that's what the court's relying on. The district court is relying on multiple and duplicitous lies. We've relied on information that came from competent authority that is admitted by their own — by the government's own agents to be truthful and certifiable and valid. Who, then, would it be most logical and plausible to believe? Thank you.  Thank you, Your Honor. Good morning to this Court. May it please the Court. My name is Walter Perkle. I'm here on behalf of the United States. And just for the record, I just wanted to correct something based on what my colleague, Mr. Fontes, said with all due respect. The first hearing, which is referenced on page 34 and 35 of the excerpt of record, Mr. Fontes himself said, We have had conversations with the Mexican consulate office to no avail regarding obtaining some kind of documents that would verify Mr. Fierro's age. He then went on to say that the certificate of live birth or the birth certificate actually came from the Mexican state of Oaxaca from a family member, either faxed directly to him or faxed through a relative through New Jersey. And so I think that was part of the problem. And I think this Court already addressed it, is that there was no way for either the magistrate court or the district court to determine whether the individual in that room, either on May 5, 2010, during the district court hearing, or on October 20 and 21, 2009, whether that was the defendant, Daniel, whether that was, in fact, Daniel Fierro-Venegas. The issue before this Court is whether the district court committed clear error. Clear error exists if the district court's decision is illogical, implausible, or without support in the record. And the record here shows that the district court's decision was logical and was plausible. The record is undisputed. The record shows that on September 29, 2009, the defendant was arrested leaving a drop house. At the time of his arrest, he was in possession of a Mexican driver's license with the name Jesus Martinez Cuevas, his photograph on there, and a date of birth on the driver's license of February 5, 1987, which would make him 22 years old. He told agents at the scene, my birthday is February 5, 1988, which would make him 21 years old. A female passenger in the car told agents that at the time of the arrest, the defendant told her, tell agents I'm 17 and my name is Daniel. When she had previously thought his name to be Jesus and that he was 21 years old. The record also shows, and what the district court also determined and analyzed, was that the defendant had been arrested on two prior occasions. And on both those prior occasions, he didn't use the name Daniel Fiora-Vanegas. On September 9, 2008. He charged him as Fiora-Vanegas. That is correct, Your Honor. The government believes he's Fiora-Vanegas. No, Your Honor. The government charged him prior to the age determination hearing when many of these, when many of the evidence regarding his name hadn't been fleshed out. And at the defendant's arraignment on September 22, he was arraigned under that name and that actually, the district court actually asked him whether or not he wanted to be arraigned under the name Daniel Fiora-Vanegas and he agreed. So when he goes, let's assume that you're successful in this and he's committed to the Bureau of Prisons, what name is he going to be committed under? Well, that will be an issue that And what date of birth is the Bureau of Prisons going to put down when he goes, when he's committed? Well, the name that he will use, the name that he will be charged under, if there's no modification to the indictment, will be Daniel Fiora-Vanegas. But it is essentially irrelevant what his name is because I mean, the point, getting to the point of this, you know, I understand deference and sometimes, you know, we adhere to the rules of deference and clear air and so forth. But there comes a time when the real world intervenes and at some point down the road it would be somewhat ironic if that we look, took a peek at if you're successful in your prosecution and goes to prison, that the documents of the United States reflect that he's a juvenile. And I mean, that well could be the case. Well, the documents wouldn't reflect a date of birth that he's given. Whether he contests his name and still says he's Daniel Fiora-Vanegas. You know, there's some impetus on the government not just to say he hasn't proven his age, but in the service of justice to find out what his true age is, isn't there? I mean, it's not too hard to clear this up for the government, it would seem to me. I understand it's not your burden, but you know. I understand your point. It's a fair point. I think that the evidence that the government has demonstrated in the record does indicate that the defendant is an adult. He's used multiple names and dates of birth in the past. And his birth date is probably February 5th, 1988. It seems to be the birth date he's used most commonly that pertains to the name Uriel Gonzalez-Martinez, which is the date of birth and name that he used in the Middle District of Pennsylvania. So I think that's probably his correct name. But whether he challenges the government in terms of modifying the indictment and he still wants to be Daniel Fiora-Vanegas, the government doesn't, that doesn't matter because the case doesn't really rest on his name. It really rests on what the witnesses said this individual did. Right. I understand all that. I'm just saying that down the road, let's assume this goes back, you get a conviction and so forth. We're going to face a habeas petition. And in fact, if he is a juvenile, it's going to be meritorious. So there is some value in the government actually finding out at this point as opposed to just resting on, you didn't prove it. You know, we did a prima facie case and you didn't sufficiently prove your age. I appreciate that. I think that's a fair point. I would say, though, that I think that the standard or preponderance of the evidence, I think the government did prove by preponderance of the evidence the defendant is not a juvenile or that the defendant was not born on June 14, 1992. And I think we proved that based on all the evidence that came forth at the hearing. The fact that you swore an oath. Yes, Your Honor. Why don't you just go through that evidence, this and this and this and this, prove the government's case. I will, Your Honor. Let's start with the arrest on September 29, 2010. Excuse me, September 29, 2009. He was arrested leaving a suspected drop house. At the time of his arrest, he was in a possession of a Mexican driver's license with the name Jesus Martinez Cuevas. The license had his photograph on there and had a birth date of February 5, 1987. And this picture, it's very clear that that is he. Correct. That picture that was on that driver's license is very clear. And he told agents at the time, I'm actually, my birthday is actually February 5, 1988. He was then arrested. A female passenger in the car, as I stated earlier, stated that he had told her at the time of the arrest to tell agents that his name was Daniel and that he was 17 years old, where she had previously thought his name to be Jesus and also previously thought him to be 21 years old. And then we go to the other two prior arrests. So prior to September 29, 2009, he was arrested on two other occasions. The first arrest took place in 2008, in September. On September 9, 2008, in Nogales, Arizona, he was arrested under the name David Figueroa Perez. The birth date associated with that arrest was February 28, 1986. The arrest paperwork associated with that arrest showed a birth date of, again, February the 5th, 1987. Both those dates would have placed him as an adult. And then those dates were on the birth certificate? Is that how we get there? No, the birth certificate that was supplied by the defense attorney and the defendant was a birth date that would make him 17. It was the birth date of June 14, 1992. Okay, and so subsequent to the September 2008 arrest, he was then again arrested in March of 2009. And again, this is only six months before the arrest that occurred in this matter. In that arrest, he was arrested under the name Uriel Gonzalez Martinez with a date of birth of February 5, 1988. He was prosecuted under that name in the Middle District of Pennsylvania, swore under oath in two hearings, both at his initial appearance and at a change of plea hearing, that he was 21 years old and he was Uriel Gonzalez Martinez. The driver's license, again, another driver's license has his photograph with that name. And again, that same date of birth. And then we get to the case of September the 29th, 2009. And you not only have the facts of his arrest, but then agents actually went to the drop house and found documentation with the name Uriel Gonzalez Martinez for the motor vehicle division records. They found a personal letter written by someone with the name Uriel Gonzalez Martinez. And if someone's going to use a name to write a personal letter, you would assume that they'd probably be using at least a real name for that purpose. And also a third driver's license with the name Jesus Martinez Cuevas with the date of birth of February 5, 1988. So they found actually a third driver's license at the drop house with his photograph on there, a date of birth that would make him an adult, and the name Jesus Martinez Cuevas. And then in subsequent to all this, the government learned that the driver's license originally seized in Pennsylvania with the name Uriel Gonzalez Martinez. That driver's license had indicia of being a reliable or authentic driver's license because there actually was someone with that name and that date of birth in the state of Oaxaca. And that driver's license in that sense appeared to be authentic. So of all the documentation that has a photograph and a name, the one that is actually the most authentic is the driver's license from Oaxaca in comparison to the photograph that was attached or appeared to be attached to a black and white fax copy of some letter that was given by his family. Is there any effort made to find out if the Oaxacan authorities could provide a birth certificate for Uriel? No, Your Honor. My recollection holds that they did find that there was someone by that name, Uriel Gonzalez Martinez, who had a date of birth in, I believe, in 19881. Thank you. Any further questions? Thanks for your argument. Thank you very much. Your rebuttal. I'd like to begin with a very telling phrase that the government uses in its argument, and that's probably. It's not certainly. It's not absolutely. And Uriel Gonzalez Martinez, as we've heard, has a birth date, according to Oaxacan officials, in 1981. Not 1987 or 1988 or 1986. The letters from the drop house and the driver's license that were retrieved at the drop house are part of step one of this process, the prima facie evidence that the government has. It doesn't matter that they didn't reveal it to us, as the record is very clear. There are about 250 pages worth of discovery that we had not received by the second day of that evidentiary hearing. That information from that search warrant at that drop house did not come to us until after the end of the hearing. And that's what the government is saying rebuts this phase two evidence. So step one, prima facie evidence. Does the government have it? Arguably. They've got a whole bunch of it with a whole bunch of different dates. It's inconclusive. Step two, by a preponderance of the evidence, by certification of the government's own witnesses, and by cooperation with the Mexican consulate, we have documents that show that this young man was born in 1992 and is, in fact, a juvenile. There is no rebuttal of that at all. There is a dearth of evidence. In step three, what rebuts the birth certificate that was retrieved by the assistance of the Mexican consulate? Now, if we have to go take a trip down at the trial court level and spend money sending people down to do videotaped interviews of every mother that's given birth to an illegal immigrant in this country who's here underage and has lied about his age, we're going to be spending a lot of money on airfare that might be good for the airlines. But let me pose this question. Then why lie is the ultimate issue? Why did he lie so many times? Because deporting a juvenile takes a lot of time. It takes a lot of energy and it takes a lot of effort. And people that come up to this country and are underage understand that it's going to take you a long time in custody if you sit there as a juvenile because we've got to contact someone to watch over your rights. We've got to contact someone from the consular office. We can't just pop you onto a bus and deport you right away. Why plead guilty as an adult? Because you get deported forthwith. It's easy if you're an adult, but not so much if you're a juvenile. This is common knowledge among the illegal immigrant community. It's got to be common knowledge among anybody that knows anything about the system.  It's your argument that when he got these driver's licenses that showed him as an adult, he did it because he was thinking about the day when he would be arrested and would likely be deported and he wanted that to be done faster? My argument is that, well, I can only speak from my personal experience, Your Honor, and I won't say mine. I'll say somebody else's, although I think the statute has run. There's a lot of fake IDs in this country that juveniles get for a variety of reasons. And so we believe that we've overcome that prima facie evidence through competent authority. The government's witnesses admitted that this is a valid certificate of birth, and there's no new evidence from the government to rebut that. It looks like the short form to me. Well, short form or long form, Your Honor, he certainly – anyway, we'll leave it at that. Thank you very much, Your Honor. Thank you for your time. Thank you both for your arguments. Interesting case, and it will be submitted for decision.
judges: Rosenthal, Fletcher B. , Thomas